IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. |
| | ) | |
| Mario Monte-Venegas | ) | |
| a/k/a "Juan Bauega Hernandez" | ) | |
| a/k/a "Juan Hernandez-Bauega" | ) | |
| a/k/a "Hector Jeron-Navaro" | ) | |
| a/k/a "Jayme Pineda Lopez" | ) | |
| a/k/a "Hector Lopez-Lopez," | ) | |
| | ) | |
| Defendant | ) | |

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Brian Perrotte, being duly sworn, depose and state:

1. I am a Deportation Officer with U.S. Immigration and Customs Enforcement "ICE" at Fairfax, Virginia. I have been employed by ICE since July of 2007.

2. My duties as a Deportation Officer with ICE include investigating administrative and criminal violations of the Immigration and Nationality Act, Title 8 of the United States Code and seeking, when applicable, prosecution and removal of violators. I have received training in general law enforcement, including training in Title 8 of the United States Code.

3. This affidavit is submitted in support of a criminal complaint charging Mario Monte-Venegas (also known as "Juan Bauega Hernandez", "Juan Hernandez-Bauega", "Hector Jeron-Navaro", "Jayme Pineda Lopez" and "Hector Lopez-Lopez," hereinafter referred to as Monte-Venegas) with being found in the United States, after being denied admission, excluded, or removed, or having departed the United States while an order of exclusion, deportation, or removal was outstanding, subsequent to a conviction for the commission of an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43) in violation

of 8 U.S.C. §§ 1326(a) and (b)(2). This affidavit is also submitted in support of an arrest warrant.

4.     The facts and information contained in this affidavit are based upon my training and experience, participation in immigration investigations, personal knowledge, and observations during the course of this investigation, as well as the observations of other agents involved in this investigation.  All observations not personally made by me were related to me by the individuals who made them or were conveyed to me by my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit contains information necessary to support probable cause and is not intended to include each and every fact and matter observed by me or known to the Government.

5.     On May 31, 2015, Monte-Venegas was arrested in Washington, D.C. for Assault with a Deadly Weapon.  At the time of arrest, Monte-Venegas identified himself by an alias, Hector Jeron-Navaro.

6.     On or about June 1, 2015, ICE was informed of the above-described arrest. Checks of law enforcement databases revealed that Hector Jeron-Navaro was an alias that previously had been used by Monte-Venegas.  Accordingly, on June 1, 2015, ICE lodged a detainer with the District of Columbia Department of Corrections, and soon thereafter Monte-Venegas was transferred to ICE custody.

7.     On June 2, 2015, Monte-Venegas's fingerprints taken in connection with the above-described arrest were compared with other fingerprints maintained in an ICE system called IDENT.  Specifically, IDENT contains fingerprint records of known aliens, and is integrated with Next Generation Identification (NGI), an FBI system that contains information on criminal arrests.  The comparison revealed positive matches to Monte-Venegas associated to FBI number 611428CB5 and Alien Registration File number A076 264 214. Additionally, the comparison revealed a photographic image of Monte-Venegas and corresponding information that he previously had been apprehended by U.S. Department of Homeland Security enforcement officers.

8. On June 2, 2015, I conducted a review of documents from Monte-Venegas's immigration file. A review of these documents showed the following information regarding Monte-Venegas:

   a. his true and correct name is Mario Monte-Venegas;
   b. he was born in Mexico;
   c. he is a citizen and national of Mexico;
   d. on or about February 14, 1997, he was ordered deported by an Immigration Judge in Denver, Colorado;
   e. on or about February 21, 1997, he was deported or removed from the United States;
   f. on or about May 22, 1999, he was again deported or removed from the United States;
   g. on or about January 21, 2003, he was again deported or removed from the United States;
   h. he did not receive permission from the Attorney General of the United States or his successor, the Secretary of the Department of Homeland Security, to reapply for admission to the United States after being removed;

Specifically, the file contained three executed Immigration Service I-205 forms, which each consist of a Warrant of Removal/Deportation bearing a photograph, fingerprint, and signature of Monte-Venegas. These records demonstrated that Monte-Venegas previously was removed three times: on or about February 21, 1997, May 22, 1999 and January 21, 2003.

8. On June 3, 2015, I submitted six exhibits containing Monte-Venegas's fingerprints to the FBI Special Processing Center for comparison. These exhibits consisted of (a) a fingerprint contained on the Immigration Service I-205 form, Warrant of Removal/Deportation showing his removal on or about February 21, 1997, (b) fingerprints taken during an immigration encounter on March 25, 1998, (c) a fingerprint contained on the Immigration Service I-205 form, Warrant of Removal/Deportation showing his removal on or about May 22, 1999, (d) fingerprints taken during an immigration encounter on January 2, 2003, (e) a fingerprint contained on the Immigration Service I-205 form, Warrant of Removal/Deportation showing his removal on or about January 21, 2003, and (f) fingerprints taken upon his arrival into ICE custody on June 2,

2015 . On June 3, 2015, the FBI responded by stating that exhibits B, C, D and F all matched fingerprints of Monte-Venegas, FBI number 611428CB5. All other exhibits submitted were too poor in quality for comparison.

9.  Documents contained in Monte-Venegas' Immigration file revealed that he previously was convicted of an aggravated felony. Under 8 U.S.C. § 1101(a)(43)(B), an aggravated felony includes illicit trafficking in a controlled substance, including a drug trafficking crime. On or about November 8, 1996, Monte-Venegas was convicted of Possession with Intent to Distribute a Controlled Substance, to wit: Cocaine, in violation of Title 58, Chapter 37, Section 8(1)(a)(iv) Utah State Code. On May 18, 1998, Monte-Venegas was convicted of Delivery of Cocaine, in violation of Washington State Code RCW 69.50.401(a)(1)(i).

10. Monte-Venegas's immigration file indicates that Monte-Venegas does not have any immigration benefit, document, or status that would allow him to enter, be admitted, pass through, or reside in the United States legally and that he has neither sought nor obtained permission from the Attorney General or the Secretary of Homeland Security to reenter the United States following his prior removal.

11.     Based on the foregoing, I submit that there is probable cause to believe that on or about May 31, 2015, in Washington, DC, within the District of Columbia, the defendant Monte-Venegas, having been removed from the United States on or about February 14, 1997, May 22, 1999 and January 21, 2003, and after having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43), was found in the United States without having obtained the express consent of the Attorney General of the United States or of his successor, the Secretary of the Department of Homeland Security, to reapply for admission to the United States.

_____
Brian Perrotte
Deportation Officer
Immigration and Customs Enforcement

Sworn to and subscribed before me on the \_\_\_\_ day of June 2015, in Washington, District of Columbia.

_____

United States Magistrate Judge

5